**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT BROWN, ) | |
| ) | |
| Petitioner, ) | No. 15-CV-9372 |
| ) | (14-CR-206) |
| v. ) | |
| ) | Judge Edmond E. Chang |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

Robert Brown, a federal inmate proceeding *pro se*, filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] In May 2015, the Court sentenced Brown to 66 months' imprisonment for wire fraud and 24 months' imprisonment for aggravated identity theft. Brown now challenges his 90-month sentence, claiming that he received ineffective assistance of counsel and that the Court miscalculated the Sentencing Guidelines. R. 1, Mot. to Vacate, Set Aside or Correct Sentence.[2] For the reasons that follow, Brown's motion is denied and no certificate of appealability will issue.

**I. Background**

Between January 2010 and March 2014, Brown participated in a scheme to file fraudulent tax returns. Plea Agreement ¶ 6, *USA v. Brown*, No. 1:14-CR-00206 (N.D. Ill. Jan. 16, 2015), ECF No. 58. Brown and others submitted around 395 false individual income tax returns using the identities of 332 elderly taxpayers. *Id.* The

---

[1]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 2255.
[2]Citations to the record filings are "R." followed by the docket number and, when necessary, a page or paragraph number.

first step of the scheme was identity theft: Brown's co-conspirators would obtain taxpayers' identifying information, such as names and social security numbers, without the taxpayers' knowledge or consent. *Id.* This information was passed along to Brown, who would then prepare and file fraudulent tax returns using the stolen identifying information. *Id.* The tax refunds issued by the IRS were then divided among Brown and his co-conspirators. *Id.* Brown and his co-conspirators fraudulently claimed $357,539 in federal tax refunds; they successfully obtained $308,829 of that claimed amount. *Id.* Brown ultimately pled guilty to wire fraud, 18 U.S.C. § 1343, and aggravated identity theft, 18 U.S.C. § 1029A(a)(1). *Id.* ¶ 5.

At Brown's sentencing hearing in May 2015, the Court calculated Brown's Guideline range as follows: Brown's base offense level for wire fraud was 7 per U.S.S.G. § 2B1.1(a)(1).[3] The offense level increased by 12 levels for the $357,539 intended loss amount per U.S.S.G. § 2B1.1(b)(1)(G); 6 levels for the 332 victim taxpayers per U.S.S.G. § 2B1.1(b)(2)(C); and 2 levels for intentionally selecting vulnerable victims per U.S.S.G. § 3A.1.1(b)(1). After decreasing Brown's offense level by 3 for acceptance of responsibility, the Court determined that the total adjusted offense level was 24 and his criminal history category was V. These calculations yielded a 92 to 115-month Guideline range for the wire fraud conviction, followed by a 24-month mandatory consecutive sentence for the aggravated identity theft. *See* 18 U.S.C. § 1028A; U.S.S.G. § 2B1.6. After

---

[3]All references to the sentencing guidelines are to the 2014 Edition of the United States Sentencing Guidelines Manual. For convenience's sake, all citations to the Manual are "U.S.S.G." followed by the section and, when necessary, a subsection or application note number.

considering the sentencing factors dictated by 18 U.S.C. § 3553, the Court sentenced Brown to 66 months for wire fraud and 24 months consecutive for aggravated identity theft, for a total term of 90 months. May 4, 2015 Sentencing Order, *USA v. Brown*, No. 1:14-CR-00206 (N.D. Ill. May 5, 2015), ECF No. 78. Brown did not appeal.

Brown now moves to correct his sentence. Mot. to Vacate, Set Aside or Correct Sentence. He alleges that his counsel rendered ineffective assistance by not objecting to any of the specific-offense enhancements, in particular the loss amount and the number-of-victims enhancements. R. 3, Brown Br. at 2, 7-13. By failing to object to these enhancements, Brown asserts that his counsel failed to preserve these issues for appeal. *Id.* at 4. Brown also alleges that the Court erred in calculating his sentence. *Id.* at 2, 13. The government argues that the motion must be denied. R. 7, Government's Resp. Br.

**II. Legal Standard**

**A. 28 U.S.C. § 2255**

Under 28 U.S.C. § 2255, a prisoner in custody pursuant to a federal sentence may move to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack … ." 28 U.S.C. § 2255. In other words, to obtain relief under Section 2255, Brown must show that the error asserted is "jurisdictional, constitutional, or is a fundamental

3

defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997).

Section 2255, however, "is not a substitute for a direct appeal." *Id.* at 706; *see also Qualls v. United States*, 774 F.2d 850, 851 (7th Cir. 1985) (citing *United States v. Addonizio*, 442 U.S. 178, 184 (1979)). Consequently, "[i]f any issue could have been raised on direct appeal, the failure to take such appeal precludes review pursuant to a section 2255 motion unless the petitioner can show 'cause' for the procedural default and 'actual prejudice' resulting from the errors of which the petitioner complains." *Qualls*, 774 F.2d at 851 (quoting *United States v. Frady*, 456 U.S. 152, 167 (1982)); *see also Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988). There is an exception, however, for ineffective-assistance claims, which are not subject to the "cause and prejudice" standard. *See Massaro v. United States*, 538 U.S. 500, 503 (2003) ("[T]here is no procedural default for failure to raise an ineffective-assistance claim on direct appeal.").

### B. Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. To receive habeas relief on the ineffective-assistance-of-counsel claim, Brown must meet the familiar two-prong, performance-and-prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, he must show that his trial counsel's performance was deficient and that prejudice resulted. *Id.* at 687. For the performance prong, the question is whether "counsel's representation fell below an objective standard of

4

reasonableness." *Id.* at 688. On prejudice, the question is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Brown must satisfy *both* prongs of the standard to be entitled to habeas relief. *Id.* at 687.

Judicial review of trial counsel's performance "must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The Court must presume that "the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted).

### III. Analysis

### A. Ineffective Assistance of Counsel

### 1. Failure to Argue Against "Double-Counting"

Brown's first argument in support of his ineffective-assistance claim is that his counsel should have objected to the loss amount and the number-of-victims enhancements that were ultimately applied to his wire fraud sentence. Brown Br. at 7-8; *see also* U.S.S.G. §§ 2B1.1(b)(1)(G) and 2B1.1(b)(2)(C). According to Brown, his two-year mandatory sentence for aggravated identity theft already accounted for the pecuniary harm and the victims engendered by his scheme. So, Brown contends, applying these enhancements to his wire fraud sentence constituted impermissible "double-counting." Brown Br. at 1; *see also* U.S.S.G. § 2B1.6 cmt. n.2.

5

Guideline § 2B1.6 governs violations for aggravated identity theft under 18 U.S.C. § 1028A: "[T]he guideline sentence for a defendant convicted under 18 U.S.C. § 1028A is [two years] … to run consecutively to any other term of imprisonment." U.S.S.G. § 2B1.6. Application Note 2 to § 2B1.6 explains how Guideline § 2B1.6 interacts with other guidelines:

> Inapplicability of Chapter Two Enhancement.—If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do *not* apply any specific offense characteristic for the *transfer, possession, or use of a means of identification when determining the sentence for the underlying offense*. A sentence under this guideline accounts for this factor for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). "Means of identification" has the meaning given that term in 18 U.S.C. § 1028(d)(7).[4]

U.S.S.G. § 2B1.6 cmt. n.2 (emphasis added).[5] Whether Application Note 2 applies depends on the text of the "specific offense characteristic" at issue. *See, e.g.*, *United States v. Jones*, 792 F.3d 831, 835 (7th Cir.) (observing that the two-level enhancement for "the *production* … of any … counterfeit access device" under § 2B1.1(b)(11)(B)(i) did not constitute "the *transfer, possession, or use* of a means of

---

[4] 18 U.S.C. § 1028(d)(7) defines "means of identification" as: "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—(A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number; (B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation; (C) unique electronic identification number, address, or routing code; or (D) telecommunication identifying information or access device (as defined in section 1029(e)) … ."

[5] The commentary accompanying U.S.S.G. § 2B1.6 does mention that Application Note 2's purpose is to avoid double-counting, but does not go into further detail. *See* U.S.S.G. Appendix C, vol. III, amend. 677 (2005) (explaining that "[t]o avoid unwarranted double-counting, [§ 2B1.6] contains an application note that prohibits the application of any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense in cases in which a sentence under § 2B1.6 is imposed in conjunction with a sentence for an underlying offense").

identification" under § 2B1.6 (emphasis added)), *cert. denied*, 136 S. Ct. 435 (2015); *United States v. Doss*, 741 F.3d 763, 767 (7th Cir. 2013) (reasoning that "[i]f, therefore, Mr. Doss's '*trafficking* of any … unauthorized access device or counterfeit access device,' U.S.S.G. § 2B1.1(b)(11)(B), as found by the district court, also constitutes 'the *transfer* … of a means of identification' under Application Note 2 to § 2 B1.6, the district court should not have applied the two-level enhancement under § 2B1.1(b)(11)(B)" (emphasis added)).

The Seventh Circuit has not analyzed whether Application Note 2 to § 2B1.6 covers the loss amount and number-of-victims enhancements—that is, whether § 2B1.6 precludes applying those enhancements "when determining the sentence for the underlying offense." U.S.S.G. § 2B1.6 cmt. n.2. Other circuits, however, have analyzed these issues and uniformly hold that a two-year sentence for aggravated identity theft does not preclude imposing enhancements for the loss amount and the number of victims under §§ 2B1.1(b)(1) and 2B1.1(b)(2), respectively. *See, e.g.*, *United States v. Ford*, 784 F.3d 1386, 1397 (11th Cir. 2015) ("For offenses governed by Section 2B1.1, like mail fraud and false claims, an enhancement is permitted under Section 2B1.1(b)(2) based on the number of victims, even where the indictment also charges aggravated identity theft."); *United States v. Williams*, 605 F. App'x 878, 882 (11th Cir. 2015) ("Section 2B1.6 also does not bar the application of enhancements predicated on the number of Williams's victims, and the amount of loss that Williams intended to cause (internal citations omitted)); *United States v. Smith*, 751 F.3d 107, 121 (3d Cir. 2014) ("Quite plainly, the victim enhancement

under § 2B1.1(b)(2) is not an enhancement based on the use of a 'means of identification'; it is an enhancement based on the number of victims."); *United States v. Anderson*, 532 F. App'x 373, 378 (4th Cir. 2013) ("Like all of our sister circuits to have considered the issue, we conclude instead that § 2B1.6 does not preclude a district court from imposing a number-of-victims enhancement in conjunction with a sentence for aggravated identity theft."); *United States v. Lyles*, 506 F. App'x 440, 447 (6th Cir. 2012) ("Because the specific offense characteristic for amount of loss … punishes the defendant for inflicting a particular monetary harm rather than for transferring, possessing, or using a means of identification, we uphold the district court's fourteen-level enhancement."); *United States v. Manatau*, 647 F.3d 1048, 1057 n.4 (10th Cir. 2011) ("[T]he number of victims is not [ ] an offense characteristic [relating to the transfer, possession, or use of a means of identification], and so the guidelines don't bar a separate enhancement based on [the number of victims]").

These courts reason that the plain language of Application Note 2 limits its application to enhancements that punish the *same substantive conduct* as "transfer[ing], possessi[ng], or us[ing] … a means of identification." U.S.S.G. § 2B1.6 cmt. n.2; *see, e.g.*, *Smith*, 751 F.3d at 121; *Anderson*, 532 F. App'x at 378; *Lyles*, 506 F. App'x at 446. This is because the comment only bars enhancements "*for* the transfer, possession, or use of a means of identification,"[6] U.S.S.G. § 2B1.6 cmt. n.2

---

[6] For example, courts routinely find that Application Note 2 precludes applying a two-level enhancement for "trafficking of any … unauthorized access device or counterfeit access device" under § 2B1.1(b)(b)(11)(B)(i). *See, e.g.*, *Doss*, 741 F.3d at 768; *United States v. Lyons*, 556 F.3d 703, 708 (8th Cir. 2009); *United States v. Jones*, 551 F.3d 19, 25 (1st Cir.

8

(emphasis added); it does not bar enhancements *for* the loss amount or the number of victims. Put another way, the loss amount and number-of-victims enhancements fall outside Application Note 2 because they account for the *results* (actual or intended) of the offense in the form of the loss amount or the number of victims; they do not comprise the *conduct* underlying the offense. *Anderson*, 532 F. App'x at 378; *Lyles*, 506 F. App'x at 446-47.

This Court agrees with these other decisions: Application Note 2 to § 2B1.6 does not preclude applying the loss amount or number-of-victims enhancements under §§ 2B1.1(b)(1) and 2B1.1(b)(2).[7] Not only does the comment's text support this conclusion,[8] but holding otherwise would conflict with the obvious statutory purpose of the Identity Penalty Enhancement Act (later codified at 18 U.S.C. § 1028A—

---

2008). This is because "'*trafficking*' … (as required for the enhancement under § 2B1.1(b)(11)(B)) *constitute[s] a 'transfer'* for purposes of Application Note 2 to § 2B1.6." *Doss*, 741 F.3d at 767 (emphasis added).

[7]To be sure, whether Application Note 2 precludes applying the number-of-victims enhancement is a slightly closer call. Under § 2B1.1(b)(2), a defendant is subject to an offense-level enhancement if the offense involved ten or more victims. U.S.S.G. § 2B1.1(b)(2). A "victim" for purposes of applying § 2B1.1(b)(2) in a "means of identification" case, includes "any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1 cmt. n.4(E). That the term "victim" includes "individual[s] whose means of identification was used," *id.*, "does not transform [§2B1.1(b)(2)] into an enhancement triggered by a 'specific offense character for the transfer, possession, or use of a means of identification,'" *Anderson*, 532 F. App'x at 379; *see also Lyles*, 506 F. App'x at 447 ("[I]t is the specific offense characteristics as defined in the Guidelines—*and not the definition of the underlying offense*—that determines the applicability of [Application Note 2]." (emphasis added)). Regardless of how the Guidelines define a "victim" under § 2B1.1(b)(2), the number-of-victims enhancement still only punishes a defendant for the harm he inflicted on others.

[8]As discussed above, *see supra* Section III.A.1 at 6-9, Application Note 2 is a prohibition on "*any* [enhancement] *for* the transfer, possession, or use of a means of identification." U.S.S.G. § 2B1.6 cmt. n.2 (emphases added). Importantly, the comment "is *not* a blanket prohibition on *all* enhancements for substantive offenses … that involve the transfer, possession, or use of a means of identification." *Lyles*, 506 F. App'x at 446 (emphasis added).

9

Aggravated Identity Theft). Before passing the Act, Congress found that "many identity thieves receive short terms of imprisonment or probation; after their release, many of these thieves … go on to use false identities to commit much more serious crimes." H.R. Rep. No. 108-528, at 3 (2004), *available at* https://www.congress.gov/108/crpt/hrpt528/CRPT-108hrpt528.pdf. Thus, the purpose of the Act was to "provide[] *enhanced penalties* for persons who steal identities to commit … serious crimes." *Id.* (emphasis added). That Congress wanted *enhanced* penalties for identity thieves strongly suggests that Application Note 2 should not be so broadly construed to include the loss amount and number-of-victims enhancements, which are features of the underlying crime separate and apart from the use of a means of identification.

One last point on Application Note 2: Brown argues that the comment precludes applying the loss amount and number-of-victims enhancements because "they are [enhancements] that *involve* the transfer, possession, or use of [a] means of identification." Brown Br. at 13 (emphasis added). But reading Application Note 2 as a prohibition against all enhancements that "*involve* the transfer, possession or use of [a] means of identification," *id.*, would yield strange results: Defendants who inflicted more financial harm and/or affected more victims would benefit the most from a blanket prohibition on all enhancements—instead of facing a significant offense-level increase for the underlying offense, their punishment would only be the two-years' imprisonment under the aggravated identity theft statute. The defendants who committed the most financially impactful crimes would gladly trade

10

the offense-level increase for loss amount, U.S.S.G. § 2B1.1(b)(1), in exchange for the two-year fixed term in § 1028A.[9] Reading Application Note 2 so broadly would undermine the purpose of the statute.

Because Application Note 2 does not preclude imposing either a loss amount or number-of-victims enhancement, the Court holds that Brown's counsel did not render ineffective assistance by failing to object to these enhancements. In other words, Brown's counsel provided adequate representation and no prejudice resulted because Brown's double-counting argument simply has no merit.

The Court hastens to add that *even if* Brown's "double-counting" argument had merit, Brown's ineffective-assistance claim would still fall short. First, it is reasonable that Brown's counsel would not raise the "double-counting" issue as to the loss amount and number-of-victims enhancements given that all of the case law on point favored the government. As noted above, circuit courts have uniformly held that Application Note 2 does not preclude imposing enhancements for loss amount and number of victims. *See supra* Section III.A.1. at 7-8. (And many of these holdings are found in published decisions. *Id.*) Second, even if his double-counting argument had merit, Brown would have faced the same sentence he now faces. This is because when determining a defendant's sentence, the Court must consider "the

---

[9]Take an identity thief (with no criminal history) who committed wire fraud and inflicted $400,000,001 in pecuniary harm as an example. The thief's base offense level for wire fraud would be seven, which translates to a 0 to 6 month guideline sentence. The thief would receive a thirty-level increase for the $400,000,001 loss amount, U.S.S.G. § 2B1.1(b)(1)(P), which would yield a total offense level of 37 and create a 210 to 262-month guideline sentence (plus the mandatory 24 months for aggravated identity theft). If Application Note 2 operated as a blanket prohibition on all enhancements, however, the thief would face a 24 to 30-month sentencing range (comprised of 0 to 6 months for the wire fraud plus the mandatory 24 months for aggravated identity theft).

11

nature and circumstances of the offense … ." 18 U.S.C. § 3553(a)(1). So even if Application Note 2 precluded applying any enhancement for the loss Brown inflicted or the number of victim taxpayers he affected, the Court would still have considered these factors under Section 3553 and, most likely, ultimately would have imposed the same 90-month sentence.

### 2. Failure to Argue for an Unauthorized-Access-Device Enhancement (Instead of the Number-of-Victims Enhancement)

Brown raises a second, alternative argument in support of his ineffective-assistance claim. He contends that his counsel should have objected to the number-of-victims enhancement, and advocated instead for a two-level enhancement for trafficking an unauthorized access device. Brown Br. at 8-12 ("[T]he enhancement for use of an unauthorized access device (U.S.S.G. § 2B1.1(b)(11)(B)(i)) could apply to Brown."); R. 9, Reply at 6 ("[T]he Court could easily have applied the access device enhancement[] to Brown in place of the number of victims enhancement."); *see also* U.S.S.G. §§ 2B1.1(b)(2)(C) and 2B1.1(b)(11)(B)(i). The crux of Brown's argument here is that the unauthorized-access-device enhancement better reflects his role in the tax fraud scheme because Brown *himself* did not *directly* steal identifying information from the victim taxpayers. Brown Br. at 8-12.

The problem with Brown's argument is that the number-of-victims enhancement and the unauthorized-access-device enhancement are not mutually exclusive. To determine whether either enhancement applied, the Court need only consider whether Brown's offense involved ten or more victims (for the number-of-victims enhancement to apply) and whether Brown's offense involved the trafficking

of an unauthorized access device (for the unauthorized-access-device enhancement to apply). A quick review of the number-of-victims enhancement and the unauthorized-access-device enhancement establishes that while the former enhancement applies to Brown's offense, the latter arguably does not.

The number-of-victims enhancement undoubtedly applies to Brown's wire fraud offense. As discussed above, *see supra* Section III.A.1. at 9 n.7, the Guidelines provide for an offense-level enhancement based on the number of victims affected by the defendant's crime. *See* U.S.S.G. § 2B1.1(b)(2). A "victim" for purposes of applying this enhancement is "any person who sustained any part of the actual loss [inflicted by the defendant]," or "any individual who sustained bodily injury as a result of the offense." U.S.S.G. § 2B1.1 cmt. n.1; *see also* U.S.S.G. § 2B1.1 cmt. n.4(E). If the defendant's crime, however, involves a "means of identification,"[10] the term "victim" also includes "any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1 cmt. n.4(E).

Brown claims that the number-of-victims enhancement does not accurately capture his role in the scheme because "[his] relationship to the identity theft victims is to a degree-once-removed." Brown Br. at 11. But applying the enhancement does not depend on the nature of the relationship between the defendant and his victims; rather, it only depends on whether "the offense … *involved* 10 or more *victims*." U.S.S.G. §§ 2B1.1(b)(2) and 2B1.1 cmt. n.4(E) (emphasis added); *see also United States v. Fox*, 626 F. App'x 841, 842 (11th Cir.

---

[10] 18 U.S.C. § 1028(d)(7) defines the term "means of identification." *See supra* Section III.A.1. at 6 n.4; *see also* U.S.S.G. § 2B1.1 cmt. n.1 ("Means of identification" has the meaning given that term in 18 U.S.C. § 1028(d)(7) … .").

2015) (holding that the number-of-victims enhancement applied to atax fraud sentence where the defendant "recruited several co-conspirators ... to help her obtain lists of names, dates of birth, and Social Security numbers," which she then used to file false tax returns); *United States v. Calhoun*, 721 F.3d 596, 605 (8th Cir. 2013) (denying the defendant's direct appeal challenging the district court's application of the number-of-victims enhancement after observing that "the Chicago *conspirators* booked at least 2000 flights using stolen credit cards during the period when [the defendant] was an active participant" (emphasis added)). And in applying specific-offense characteristics, the sentencing court must consider not just the defendant's *personal* conduct, but also all "relevant conduct," including conduct taken by *others* if that conduct is jointly undertaken in furtherance of the crime (unless the text or an application note states otherwise, as they sometimes do). U.S.S.G. § 1B1.3(a)(1)(B). Here, the tax fraud scheme that Brown—and others—participated in involved 332 victim taxpayers "whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1 cmt. n.4(E). So, applying the number-of-victims enhancement to Brown's wire fraud sentence was appropriate.

It is less clear whether the unauthorized-access-device enhancement applies to Brown's wire fraud offense. (And the Court notes that whether the enhancement applies for purposes of deciding Brown's motion is immaterial, as it would only operate to increase the Guidelines advice.) The Guidelines provide for a two-level enhancement for "the production or trafficking of any ... unauthorized access device

… ."[11] U.S.S.G. § 2B1.1(b)(11)(B)(i). Brown asserts that "the enhancement for use of an unauthorized access device (U.S.S.G. § 2B1.1(b)(11)(B)(i)) [applies] to [him]" because "it accurately describes his role in the scheme and his use of the stolen means of identification." Brown Br. at 10. But § 2B1.1(b)(11)(B)(i) does not punish an offender's "*use* of an authorized access device," *id.*; rather, it punishes an offender for "*produc[ing] or traffick[ing]* … an unauthorized access device." U.S.S.G. § 2B1.1(b)(11)(B)(i) (emphasis added). There is no record evidence showing that Brown produced any unauthorized access device—he did not, for example, manufacture fake drivers' licenses. To be sure, it is a closer call as to whether Brown's offense involved trafficking[12] an unauthorized access device. But even if it did, the Court would have been barred from applying the enhancement given the prohibition against "double-counting" in Application Note 2 to § 2B1.6. As explained, *see supra* Section III.A.1. at 7, 9 n.6, the Seventh Circuit has held that "trafficking …. [an] authorized access device" constitutes "the transfer … of a means of identification" for purposes of applying Application Note 2. *See Doss*, 741 F.3d at 768 ("Here Application Note 2 to § 2B1.6 precluded the increase under § 2B1.1(b)(11)(B) for trafficking in unauthorized access devices because, at least under the facts presented here, that trafficking constituted a 'transfer [ ] … of a means of identification.'"). Just as Brown's first ineffective-assistance argument

---

[11]An "access device" constitutes a "means of identification" under 18 U.S.C. § 1028(d)(7). So, in general terms, an "access device" is "any name or number that may be used … to identify a specific individual." 18 U.S.C. § 1028(d)(7)(D).

[12]The term "traffic" means "transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of." 18 U.S.C. § 1029(e)(5); *see also Doss*, 741 F.3d at 767-68 (applying 18 U.S.C. § 1029(e)(5) to determine whether the unauthorized-access-device enhancement applied to the defendant).

failed, so too must this one. Brown's counsel did not render ineffective assistance by failing to object to the number-of-victims enhancement and advocate instead for applying the access-device enhancement. The victims enhancement plainly applied.[13]

## B. Procedural Error

Finally, Brown argues that even if his counsel did not render ineffective assistance, the Court miscalculated his guideline sentence.[14] Brown Br. at 2 ("Regardless [of Brown's ineffective assistance of counsel claim], the sentencing court committed plain error in not addressing the double counting and incorrect enhancement issues."). Even if a stand-alone Guidelines error could justify § 2555 relief, the Guidelines range was calculated correctly, as explained above.

---

[13]And just like Brown's "double-counting" argument, *even if* it was appropriate to apply the unauthorized-access-device enhancement in place of the number-of-victims enhancement, Brown's ineffective-assistance claim would still fail. Brown cites no case law (and the Court has not found any) holding that the number-of-victims enhancement only applies where the defendant *himself* stole identifying information from his victims. And the seemingly few cases on point actually hold to the contrary. *See Fox*, 626 F. App'x at 842; *Calhoun*, 721 F.3d at 605. So his counsel cannot be faulted for not presenting the argument.

[14]Brown alleges that the Court committed "plain error" by failing to address double-counting under Application Note 2 and by applying the number-of-victims enhancement to his sentence. Brown Br. at 2, 6, 13. But Brown procedurally defaulted these arguments because he did not directly appeal his sentence. Given this, the Court reviews these procedurally defaulted arguments under a "cause and prejudice" standard. *See Bontkowski*, 850 F.2d at 313. (The Court notes that the government did not object to the "plain error" standard of review or even argue that Brown waived his miscalculation arguments by failing to raise them on appeal, *see* Government's Resp. at 10.) Brown has forfeited his miscalculation arguments given that he failed to argue, let alone establish, that his procedural default may be excepted under the cause and prejudice standard. *See Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008). In any event, the Court notes that it does not make a practical difference which standard applies: Brown's claim that the Court miscalculated his guideline sentence fails under either standard.

## IV. Conclusion

For the reasons discussed above, Brown's Motion to Vacate, Set Aside or Correct Sentence, R. 1, is denied. If Brown seeks to appeal the Court's decision, he must first obtain a certificate of appealability. Under 28 U.S.C. § 2253, "an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255" unless the district judge first issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted). For the reasons discussed above, Brown has not made a substantial showing of the denial of a constitutional right; reasonable jurists would not debate whether the challenges in his Section 2255 motion should have been resolved differently or determine that Brown deserves

encouragement to proceed further with his habeas claims. *See Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). It is clear, whether viewed through the lens of ineffective-assistance or directly on the merits, that Brown's sentencing claims have no merit. So this Court declines to issue a certificate of appealability.

ENTERED:

<u>     s/Edmond E. Chang     </u>
Honorable Edmond E. Chang
United States District Judge

DATE: April 20, 2016

18